Nick Pacheco, Esq. (SBN 173391)
  nickpacheco@nickpachecolaw.com
NICK PACHECO LAW GROUP, APC
15501 San Fernando Mission Blvd., Suite 110
Mission Hills, CA 91345
Telephone: (888) 888-8641
Facsimile:   (800) 210-0028

Attorney for Plaintiff,
ARMANDO DIAZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA–SAN JOSE DIVISON

| | |
|---|---|
| ARMANDO DIAZ, an individual,<br><br>         Plaintiff,<br><br>    vs.<br><br>WELLS FARGO BANK, N.A.; CAL-WESTERN RECONVEYANCE CORP. and DOES 1 through 20, Inclusive.<br><br>         Defendants. | Case No.: 5:13-cv-04915-LHK<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. BREACH OF CONTRACT AND VIOLATION OF COURT-APPROVED SETTLEMENT AGREEMENT;<br>2. VIOLATION OF CIVIL CODE SECTION 2923.55;<br>3. VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200;<br>4. VIOLATION OF CIVIL CODE SECTION 2924.17;<br>5.<br>DEMAND FOR JURY TRIAL |

**COMES NOW** Plaintiff Armando Diaz ("Plaintiff"), files this First Amended Complaint pursuant to Federal Rules of Civil Procedure 15(a)(1)(B) and alleges as follow:

## JURISDICTION

1. The transactions and events which are the subject matter of this Complaint all occurred within the County of Santa Clara, State of California.

2. The Subject Property is commonly known as 744 Orkney Ave., Santa Clara, CA 95054 with APN: 101-23-031 (hereinafter referred as "Subject Property"). The Subject Property is situated in County of Santa Clara in the State of California.

## PARTIES

3. At all times relevant herein, Plaintiff was over the age of eighteen and a resident in the County of Santa Clara, State of California.

4. Plaintiff is informed and believes and thereon alleges that Defendant WELLS FARGO BANK, N.A. ("WELLS FARGO"), is doing business in California. At all times relevant herein, Plaintiff is informed and believes and thereon alleges that Defendant WELLS FARGO is, and was, acting as *Mortgage Servicer* and *Current Beneficiary*.

5. Plaintiff is informed and believes and thereon alleges that Defendant CAL-WESTERN RECONVEYANCE CORP. ("CAL-WESTERN"), is acting on its own and doing business in California. At all times relevant herein, Plaintiff is informed and believes and thereon alleges that CAL-WESTERN is, and was, acting as *Foreclosure Trustee*.

6. Defendants WELLS FARGO, CAL WESTERN and DOES 1 through 20 shall collectively be referred to as "DEFENDANTS" named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES 1 through 20 ("UNKNOWN DEFENDANTS") are unknown to Plaintiff. These unknown

Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property, hereinafter described, adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property.

7. Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendants, herein DOES 1 through 20, are responsible for the events hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendants when ascertained.

8. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers, and co-conspirators of each and every other named or unnamed Defendant in this Complaint.

9. Plaintiff is informed and believes and thereon alleges that each of the said Defendants are and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

10. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity. As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with California Business and Professions Code section 17200; Unfair and Deceptive Business Practices and Acts and California Civil Code multiple sections; and among others.

///

**FACTUAL ALLEGATIONS**

11. This is a action for breach of settlement agreement for which Plaintiff was a member of Settlement Class Members who is a beneficiary of the Agreement and Stipulation of Settlement of Class Action (the "Class Action Settlement Agreement" or the "Agreement") in an action captioned In re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation (N.D. Cal. Case No. M:09-CV-2015-JF) (the "Wachovia Class Action").

12. On December 10, 2010, the plaintiffs in the Wachovia Class Action and Defendants executed the Class Action Settlement Agreement, which resolved all claims in the Wachovia Class Action. The Class Action Settlement Agreement was finally approved by an Order of this Court (Fogel, J.) on May 17, 2011 (Dkt. No. 207) (the "Final Approval Order"). The Class Action Settlement Agreement became effective on September 7, 2011. The settlement agreement that resolved multi-district litigation concerning Defendant's "Pick-a-Payment" mortgage loan. Pursuant to the terms of such loans, the borrower selected a monthly mortgage payment, choosing either: (1) a fully-amortizing 30-year interest and principal payment, such that the loan would be satisfied in the traditional 30-year term; (2) a fully-amortizing 15-year interest and principal payment, such that the loan would be satisfied in a 15-year term; (3) an "interest-only payment"; or (4) a lesser, "minimum payment." When a borrower chose a minimum payment, which by definition was insufficient to pay the interest owed, unpaid interest was added to the loan balance, and the outstanding loan balance increased. The named plaintiffs alleged that the loans violated the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. section 1601 et seq., and various state laws. The named plaintiffs asserted that the relevant loan documents failed to make adequate disclosures regarding, among other things, the certainty of negative amortization if the minimum payment option was selected.

13. The settlement agreement identified three categories of class members: Settlement Class A consists of borrowers who no longer hold their "Pick-A-Payment"

loans; Settlement Class B consists of borrowers who still hold their loans and are not in default; and Settlement Class C consists of borrowers who still hold their loans and are in default. !d. at 2-3. Under the terms of the settlement, Defendants agreed to pay $50 million to the class and to implement a loan modification program available to qualified Settlement Class C members and to qualified Settlement Class B members who are in "imminent default.". Defendants agreed to consider an eligible class member for the federal Home Affordable Modification Program ("HAMP") and for Defendant's own loan modification program, Mortgage Assistance Program 2 ("MAP2R"). The loan modification program is to remain in place through June 2013.

14. Defendant has failed to comply with the settlement agreement's requirements, particularly with respect to consideration of Plaintiff for modification under the MAP2R program.

## SETTLEMENT CLASSES B AND C

15. Section IV of the Class Action Settlement Agreement provided for the certification of Settlement Class B as follows:

> All current Borrowers of World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still have a Pick-a-Payment mortgage loan and are not in Default.

Agreement section IV.B.

16. Section IV of the Class Action Settlement Agreement also provided for the certification of Settlement Class C as follows:

> All current Borrowers of World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that is secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement

agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still have a Pick-a-Payment mortgage loan and are in Default.
Agreement, section IV.C.

## THE LOAN MODIFICATION PROGRAM FOR SETTLEMENT CLASS B AND C MEMBERS

17.   The Class Action Settlement Agreement provides, in pertinent part, that Defendants shall make the expansive loan modification program available to, among others, all members of Settlement Class B who are or become in "Imminent Default" by June 30, 2013:

> **Loan Modification Program**. Commencing on December 18, 2010 and continuing until June 30, 2013, the Defendants shall make loan modifications available for ***Settlement Class B Members in Imminent Default, who later become in Imminent Default***, or who later become in Default, and Settlement Class C Members in accordance with the following provisions of this Section VI(E). Such loan modifications shall be in addition to the amounts paid pursuant to the Common Fund, the Fee Award, and Administration Expenses described in Sections VI(A), (B), and (C) of this Agreement.
>
> ***Loan Modifications To Be Considered***. Subject to the provisions contained in Section VI(E)(4) and consistent with federal requirements, ***each Settlement Class B Member in Imminent Default, who later becomes in Imminent Default***, or who later becomes in Default, and all Settlement Class C Members first shall be considered for a HAMP Modification. Subject to the provisions contained in Section VI(E)(4), Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for or elect not to accept a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(2), (3), and (5) of this Agreement.
>
> ***MAP2R Modification***. Subject to the provisions contained in Section VI(E)(4), ***Settlement Class B Members in Imminent Default, who later become in Imminent Default***, or who later become in Default, and Settlement Class C Members who do not qualify for or elect a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(3) and (5) of this Agreement. The following process shall commence upon receipt of the documents described in Section VI(E)(7) and subsequent verification that the Settlement Class Member's DTI is above thirty-one percent (31%). If a loan is modified under MAP2R, the loan will be converted to a fully-amortizing loan and the negative amortization feature will be eliminated.

Agreement, section VI.E (emphasis added)

18. Despite the Class Action Settlement Agreement's goal of providing struggling borrowers with affordable monthly mortgage payments, before they defaulted, through principal reduction, interest rate reduction and extension of the loan's remaining term, Wells Fargo has violated the Class Action Settlement Agreement in two ways pertinent here that have prevented those Settlement Class Members from being run through the Agreement's loan modification waterfall to determine if an affordable monthly mortgage payment can be achieved.

**WELLS FARGO'S NON-COMPLIANCE WITH THE CONSENT JUDGMENT'S SETTLEMENT TERM SHEET MAKES IT LIABLE UNDER STATE LAW**

19. Plaintiff alleges that Wells Fargo is not in compliance with the Consent Judgment in United States of America v. Bank of America, et. al (Case# 1:12-cv-00361-RMC) and consequently it cannot take advantage of the "safe harbor" in Civil Code Section 2924.12(g).

20. Plaintiff further alleges that Wells Fargo has violated the Consent Judgment in the following areas:

   A. **Section I.A.18**: WELLS failed to send the Plaintiff a statement 14 days prior to referring this loan to the foreclosure trustee containing the information required in paragraphs I.B.6 (items available upon borrower request), I.B.10 (account statement), I.C.2 and I.C.3 (ownership statement), and IV.B.13 (loss mitigation statement);
   B. **Section IV.B.13**: WELLS failed to send a statement to the Plaintiff outlining loss mitigation efforts undertaken with respect to the borrower prior to referral to foreclosure trustee;
   C. **Section IV.D.6**: WELLS failed to send the Plaintiff a "Post Referral to Foreclosure Solicitation Letter";
   D. **Section I.A.1**: WELLS failed to ensure that the factual assertions made in the Notice of Default, Notice of Sale, and Substitution of Trustee are:
      i. accurate,
      ii. complete,
      iii. supported by competent evidence, and/or
      iv. supported by reliable evidence
   E. **Section IV.A.2**: WELLS failed to offer *and facilitate* a loan modification for Plaintiff rather than initiate foreclosure.

21. Plaintiff further alleges that any loan modification accepted by Plaintiff prior to WELLS entering into the above referenced Consent Judgment alleviate WELLS from complying with Section IV.A.2 mandating that it offer and facilitate a loan

modification to Plaintiff rather than initiate foreclosure since Plaintiff is net present value positive and would meet other investor, guarantor, insurer and program requirements.

22. Plaintiff further alleges that on or about May 15, 2013, CAL-WESTERN, as an agent for the beneficiary, recorded an inaccurate Notice of Default ("NOD") against the subject property in the official records of Monterey County since the factual assertions contained within it are false, specifically regarding compliance with Civil Code section 2923.55.

23. Contrary to the requirements of Civil Code section 2923.55, WELLS and CAL-WESTERN, neither satisfied the 2923.55 contact requirements nor satisfied due diligence requirements prior to filing the Notice of Default or commencing foreclosure proceedings, and as such the non-judicial foreclosure is not being conducted in accordance with Civil Code section 2924.

24. Plaintiff further alleges that Civil Code section 2924.17 mandates that notice of defaults, notice of sales, and substitution of trustees be accurate and complete and supported by competent and reliable evidence ***and before recording these documents*** a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

25. Plaintiff alleges that the Substitution of Trustee recorded on July 23, 2013 by CAL-WESTERN violates Civil Code Section 2924.17 since it does not contain the typical Mortgage Servicer language indicating compliance with the duties outlined in Section 2924.17[1], and consequently, further alleges that the document not only fails "on its face" but also the Mortgage Servicer DID NOT ACTUALLY PERFORM the mandated obligations prior to recording the Assignment in violation of Section 2924.17.

---

1. [1] I certify that the [Substitution of Trustee, Notice of Trustee's Sale, etc.] is accurate and complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

26. Plaintiff also alleges that the Notice of Trustee's Sale recorded on October 1, 2013 by CAL-WESTERN violates Civil Code Section 2924.17 since it does not contain the typical Mortgage Servicer language indicating compliance with the duties outlined in Section 2924.17, and consequently, further alleges that the document not only fails "on its face" but also the Mortgage Servicer DID NOT ACTUALLY PERFORM the mandated obligations prior to recording the Assignment in violation of Section 2924.17.

27. Plaintiff alleges that Defendants' material violations of Civil Code sections 2923.55 and 2924.17 preclude it from conducting a Trustee's Sale of Plaintiff's property until they demonstrate to a court that they have cured the violations and complied with the law.

28. As a result of the unlawful actions of WELLS, CAL-WESTERN, their agents, and DOES 1 through 20, Plaintiff is now forced to file this action to avoid losing his home and prevent defendants from foreclosing on the Subject Property without complying with Civil Code 2923.55.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT AND VIOLATION OF**
**COURT-APPROVED SETTLEMENT AGREEMENT**
(AGAINST ALL DEFENDANTS)

29. Plaintiff re-alleges and incorporates by references all preceding paragraphs as though fully set forth herein.

30. Plaintiff alleges that pursuant to the Class Action Settlement Agreement Defendant WELLS FARGO was required to make loan modification program available to Plaintiff who was in imminent default by June 30, 2013.

31. Plaintiff further alleges that, under the Class Action Settlement Agreement, Defendant was required to determine whether Plaintiff had suffered a financial hardship and was in imminent default according to the criteria as described above.

32. Plaintiff further alleges that Plaintiff was Settlement Class Member who had suffered a financial hardship and was in imminent default according to the criteria as described above.

33. Plaintiff alleges that Defendant WELLS FARGO refused to review Plaintiff's request for loan modification review by failing to properly apply the hardship and other imminent default criteria set forth above, in breach and violation of the contractual Settlement Agreement that the Court approved.

34. Pursuant to the Settlement Agreement, Defendant WELLS FARGO agreed that it would provide loan modification review for Plaintiff as a member of the Class Action.

35. Plaintiff has fully performed all conditions, covenants, and promises to be performed on the part of Plaintiff under the Settlement Agreement between Class Members and Defendant.

36. Although Plaintiff has demanded that Defendant perform on its part by requesting a loan modification review, Defendant WELLS FARGO has failed and refused, and continues to fail and refuse to take any steps necessary to provide a loan modification review.

37. Defendant WELLS FARGO has breached the Settlement Agreement by failing and refusing to provide a loan modification review.

38. As a proximate result of the breach of the Settlement Agreement by Defendant WELLS FARGO, as herein alleged, Plaintiff has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

///

///

///

///

///

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE section 2923.55**
(AGAINST ALL DEFENDANTS WELLS)

39. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

40. Pursuant to Civil Code section 2924.15(a) the Deed of Trust comes within the protections of Civil Code section 2923.55 because:

    i. The subject property is a residential real property that is occupied by Plaintiff as his primary residence;
    ii. The subject property contains no more than four dwelling units;
    iii. The first loan mortgage is the foreclosing mortgage;
    iv. Defendants have not complied with National Mortgage Settlement.

41. On or about April 18, 2013, WELLS, CAL-WESTERN and DOES 1 through 20 recorded a Notice of Default against the subject property without compliance with California Civil Code section 2923.55.

42. Plaintiff further alleges that all times mentioned herein WELLS, CAL-WESTERN and DOES 1 through 20, had a duty to comply with all of the requirements of Civil Code section 2923.55 before filing a "Notice of Default".

43. At all times prior to Defendants' filing of the Notice of Default, Plaintiff was available to meet with his servicer, mortgagee, trustee, beneficiary, or authorized agent to explore available options to avoid foreclosure. Despite Plaintiff's availability to explore foreclosure avoidance options, these Defendants, and each of them failed to contact or attempt to contact Plaintiff in order to comply with all the requirements of section 2923.55(b)(2), including but not limited to the following:

    a. Advise Plaintiff that he could meet in person with Defendants within 14 days to discuss the loan; and
    b. Review all potential foreclosure avoidance options available to Plaintiff.

44. The declaration attached to the notice of default indicates that defendants has exercised due diligence. However, the statement in the declaration is false since Plaintiff never evaded any contact with Defendants and his telephone was not

disconnected. Defendants could have communicated with Plaintiff or his attorney had Defendants attempted to contact Plaintiff.

45. At no time did the mortgagee, trustee, beneficiary, or authorized agent contact Plaintiff, in person or by telephone, and offer to meet with Plaintiff to assess the his financial situation and explore options to avoid foreclosure as mandated by Civ. Code section 2923.55.

46. Moreover, Plaintiff has NOT:
   a. Surrendered the subject property; Filed for bankruptcy; Contracted with any organization, person, or entity whose primary business is advising people who have decided to leave their homes.

47. Finally, pursuant to the requirements of 2923.55(b)(1) Defendants have violated section 2923.55 by NOT sending the following information to the Plaintiff in writing:
   i. A statement that Plaintiff may request a copy of the promissory note or other evidence of indebtedness;
   ii. A statement that Plaintiff may request a copy of the deed of trust;
   iii. A statement that Plaintiff may request a copy of any assignment, if applicable, of the deed of trust required to demonstrate the right of the mortgage servicer to foreclose;
   iv. A statement that Plaintiff may request a copy of the payment history.

48. As a proximate result of Defendants' failure to comply with 2923.55, Civil Code section 2923.55 absolutely precludes WELLS, CAL-WESTERN and DOES 1 through 20 from filing a Notice of Default pursuant to Civil Code section 2924 until 30 days after compliance with the statute.

49. WELLS, CAL-WESTERN and DOES 1 through 20 failed to satisfy the detailed requirements of Civil Code section 2923.55(b) (2), or the due diligence requirements of Civil Code section 2923.55(f), and did not adhere to the mandates laid out by the legislature before commencing a non-judicial foreclosure. Accordingly they are precluded from proceeding with non-judicial foreclosure pursuant Civil Code section 2924 until the requisite contact is made with Plaintiff.

50. Pursuant to subdivision (g) of California Civil Code section 2924, WELLS, CAL-WESTERN and DOES 1 through 20 must *rescind* the Notice of Default and CAL-WESTERN, as the foreclosing trustee, must *postpone* the sale of the Subject Property until such time that they have complied with requirements of Civil Code section 2923.55.[2]

51. As a direct and proximate result of the wrongful conduct described herein, Plaintiff will suffer an irreparable injury if WELLS, CAL-WESTERN and DOES 1 through 20 are allowed to proceed with an unauthorized Trustee Sale of the Subject Property. Pursuant to California Civil Code section 2924, Plaintiff is entitled to *rescission* of the defective Notice of Default.

**THIRD CAUSE OF ACTION**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**
(AGAINST ALL DEFENDANTS)

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53. California Business and Professions Code section 17200, et seq., prohibits acts of unfair competition, which shall mean and include any "unlawful, unfair, or fraudulent business act of practice."

54. Unfair competition is defined in Section 17200 as encompassing any one of the following five types of business "wrongs":[3] (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; (3) a "fraudulent" business act or practice; (4) "unfair, deceptive, untrue or misleading advertising"; and (5) any act prohibited by Sections 17500-17577.5. The definitions in Section 17200 are disjunctive.[4]

---

[2] "If the trial court finds that [Defendant] has complied with section 2923.5, foreclosure may proceed. If not, it shall be postponed until [Defendant] files a ***new*** notice of default in the wake of substantive compliance with section 2923.5." Mabry v. Superior Court, 185 Cal.App.4th 208, 237 (2010) (emphasis added).

[3] The full text of Section 17200 reads as follows:
As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with 17500) of Part 3 of Division 7 of the Business and Professions Code.

[4] See State Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th 1093, 1102 (1996).

Each of these five "wrongs" operates independently from the others. "[I]n other words, a practice are prohibited as "unfair" or "fraudulent" even if not "unlawful" and vice versa."[5]

55. Defendants' conduct alleged herein constitutes "unfair" and "fraudulent" conduct under Cal. Bus. & Prof. Code section 17200, et seq.

56. As more fully described above, the acts and practices of WELLS, CAL-WESTERN, and DOES 1 through 20 are likely to deceive, as they are directed toward unsophisticated borrowers and deliberately target members of the populace least able to assess the legitimacy of complex mortgage transactions due to their financial vulnerability, lack of mastery of the English language and lack of familiarity with financial terminology.

57. Defendants WELLS, CAL-WESTERN, and DOES 1 through 20 ignored California non-judicial foreclosure statutes 2924 et seq. and engaged in systematic fraudulent and unfair business practices by providing misleading and incomplete information in order to foreclose on the Subject Property.

58. Plaintiff is informed and believes and thereon alleges that WELLS, CAL-WESTERN and DOES 1 through 20 continue in their fraudulent and unfair business practices which include but are not limited to: routinely issuing a Notice of Default without first complying with the legal requirements of California non-judicial foreclosure statutory scheme.

59. California law precludes any lender in California to begin foreclosure (i.e. filing a Notice of Default, or requesting the same), without the lender contacting the borrower(s) or satisfying due diligence requirement.

60. California Civil Code section 2923.55 provides in pertinent part 2923.55: A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by

---

[5] Id

paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

61. Furthermore, WELLS, CAL-WESTERN, and DOES 1 through 20, recorded a false declaration of compliance, declaring compliance with California Civil Code section 2923.55.

62. Recording false declaration in County Recorder's Office was in violation of California Penal Code section 115 which provides in pertinent part:
    i. Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony;
    ii. Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

63. The Declaration of Compliance filed by WELLS, CAL-WESTERN, and DOES 1 through 20 in the County Recorder's office as required by Section 2923.55 of the California Civil Code was false and defective since Defendants did not satisfy the requirement of California Civil Code section 2923.55.

64. Therefore, WELLS, CAL-WESTERN, and DOES 1 through 20 are guilty of misconduct/felony for recording the Notice of Default and subsequently a Notice of Trustee's Sale with a false instrument according to California Penal Code section 115.

65. Since WELLS, CAL-WESTERN, and DOES 1 through 20 have violated a statute, their failure to exercise due diligence will be presumed.

66. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of WELLS, CAL-WESTERN and DOES 1 through 20, Plaintiff has suffered and will continue to suffer damages in not being afforded the opportunity to discuss all the alternatives to avoid foreclosure, losing a substantial amount of money in foreclosure fees and penalties, late fees, and other improper payments, fees and charges.

67. Plaintiff has standing to pursue this claim because as a result of Defendants' actions, Plaintiff has suffered injury in fact and have lost money due to

paying higher fees, paying attorney fees to fight the foreclosure, diminishing value in his real property due to invalid notice of default being recorded, foreclosure penalties and unwarranted fees, receiving loans inferior to those that they were promised; paying exorbitant and unreasonable fees; and substantial damage or risk of damage to his credit.

68. The business practices of WELLS, CAL-WESTERN and DOES 1 through 20, as alleged herein and described above are fraudulent and unfair because they are likely to deceive borrowers such as Plaintiff.

69. The fraudulent business practices of WELLS, CAL-WESTERN and DOES 1 through 20, as described herein are continuing, capable of repetition, and will continue unless restrained and enjoined by the Court.

70. The business practices of WELLS, CAL-WESTERN and DOES 1 through 20, as alleged herein, are "unfair" because they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to mortgage borrowers.

71. The conduct of WELLS, CAL-WESTERN and DOES 1 through 20 is also "unfair" because the utility, if any, of their conduct alleged herein is vastly outweighed by the gravity of the harm these practices impose on borrowers such as Plaintiff.

72. Furthermore, the business practices of WELLS, CAL-WESTERN and DOES 1 through 20, offend the legislatively declared policy of providing opportunities for mortgage borrowers to make intelligent decisions when obtaining a loan and seeking guidance to save their homes from foreclosure.

73. Plaintiff further alleges that the fraudulent actions of WELLS, CAL-WESTERN and DOES 1 through 20 alleged herein caused Plaintiff to face the threat of Foreclosure and removal from his family home.

///

///

///

///

### FOURTH CAUSE OF ACTION
**VIOLATION OF CIVIL CODE SECTION 2924.17**
(AGAINST ALL DEFENDANTS)

74. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

75. Civil Code section 2924.17(b) states, before recording an Substitution of Trustee and Notice of Trustee's Sale a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan."

76. The Substitution of Trustee and Notice of Trustee's Sale recorded against Plaintiff's property in 2013 do not contain the required language as mandated by Civil Code Section 2924.17(b).

77. Plaintiffs' allege that pursuant to Civil Code Section 2924.12, Defendants cannot proceed with the sale of Plaintiffs home until they have demonstrated to this court that they have corrected and remedied the violation.

78. Wherein, Plaintiff will suffer an irreparable injury not compensable in damages if as a direct and proximate result of the wrongful conduct described Defendants are allowed to proceed with an unauthorized Trustee Sale of the Subject Property.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1. For specific performance directing Defendant WELLS FARGO to promptly provide a loan modification review.
2. For Compensatory Damages in an amount to be determined by proof at trial.
3. For Special Damages in an amount to be determined by proof at trial.

4. For General Damages in an amount to be determined by proof at trial.

5. For Treble Damages in an amount to be determined by proof at trial.

6. For Punitive Damages as against the individual defendants.

7. For Attorney's Fees and Costs of this action.

8. For any prejudgment or other interest according to law.

9. Any other and further relief that the Court considers just and proper.

10. For Rescission of Notice of Default.

Dated: November 20, 2013                  Nick Pacheco Law Group

                                             /s/ Nick Pacheco

                                             Nick Pacheco, Attorney for Plaintiff